STEPHANIE M. HINDS (CABN 154284)
United States Attorney
MICHELLE LO (NYRN 4325163)
Chief, Civil Division
MICHAEL A. KEOUGH (NYRN 5199666)
Assistant United States Attorney

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-6878
    Fax: (415) 436-7234
    michael.keough@usdoj.gov

*Attorneys for Defendants Jeff Agster, Eva Chan, Mark Hodges and Robin Lee*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| RENÉ QUIÑONEZ and MOVEMENT INK LLC,<br><br>    Plaintiffs,<br><br>v.<br><br>UNITED STATES OF AMERICA, *et al.*,<br><br>    Defendants. | Case No. 3:22-CV-03195-WHO<br><br>**REPLY IN SUPPORT OF MOTION TO DISMISS CLAIMS AGAINST DEFENDANTS JEFF AGSTER, EVA CHAN, MARK HODGES, AND ROBIN LEE, OR IN THE ALTERNATIVE MOTION TO STRIKE**<br><br>Hrg Date: Wednesday, March 8, 2023<br>Time:     2:00 p.m. |

Defendants Jeff Agster, Eva Chan, Mark Hodges, and Robin Lee (the "Individual Defendants") submit the following reply in further support of the Motion to Dismiss Claims Against Defendants Agster, Chan, Hodges, and Lee, or in the Alternative Motion to Strike (Dkt. 52, the "Individuals' Motion") and in response to Plaintiffs' opposition to the same (Dkt. 57, the "Opposition" or "Opp.").

## I. PRELIMINARY STATEMENT

Plaintiffs' Opposition asks the Court to time-travel to the year 1988 to recognize Plaintiffs' claims by ignoring three decades of Supreme Court precedent culminating in *Egbert v. Boule*, 142 S. Ct. 1793 (2022). The Court cannot do so for several reasons:

*First*, Plaintiffs concede that their First Amendment retaliation claims and claims arising directly under the U.S. Constitution are presently barred. Plaintiffs also do not dispute that declaratory relief is not available under *Bivens*. Thus these claims should be dismissed.

*Second*, *Bivens* has never been extended to cases involving Postal Inspectors or the detention of parcels, or claims by corporations as plaintiffs, and Plaintiffs cite no authority to the contrary. Under *Egbert*, Congress (and not the courts) is the proper party to determine whether a cause of action should exist in these circumstances. Plaintiffs try to make an end-run around this through a creative reading of the Westfall Act that has not been adopted by any court. This Court should reject it, too.

*Third*, even if the Court extends *Bivens* here, the Individual Defendants would be entitled to qualified immunity because they did not violate any clearly established right of which a reasonable person would have known. Rather than analyze the physical characteristics of the parcels at issue piecemeal as Plaintiffs would have it, the combined weight of these characteristics alongside the court-approved "drug package profile" provided the requisite reasonable suspicion to seize the parcels. Further, all of the existing caselaw at the time of the seizures indicated that the approximately 36-hour seizure of these parcels was reasonable.

*Fourth*, the allegations in the First Amended Complaint contradict the Opposition's assertion that the parcels at issue were searched. Without plausible allegations that searches occurred, claims related to purported searches must be dismissed.

*Finally*, while it may be the case that Plaintiffs are left without a remedy for money damages given Congress' decision not to provide a statutory cause of action that creates one, such a situation

must be addressed (if at all) by Congress, and not the courts.

## II.  ARGUMENT

### A.  Plaintiffs Concede That First Amendment Retaliation Claims Under *Bivens* and Claims Arising Directly Under the U.S. Constitution Are Barred

The Individuals' Motion establishes that First Amendment retaliation claims are not cognizable under *Bivens*.  *See* Individuals' Motion at 15.  While Plaintiffs' Opposition largely ignores the analytical framework set out by the Supreme Court in *Egbert*, Plaintiffs at least concede that *Egbert* bars their First Amendment retaliation claims.  *See* Opp. at 13; *Egbert*, 142 S. Ct. at 1807.  Plaintiffs similarly concede that claims arising directly under the U.S. Constitution are not cognizable.  *See* Individuals' Motion at 15-16; Opp. at 13.  As a result, Counts 6, 9, 10 and 12 should be dismissed.

### B.  Plaintiffs' Opposition Does Not Salvage Their Fourth Amendment *Bivens* Claim

#### 1.  No *Bivens* Remedy Exists for the Detention or Delay of Parcels By Postal Employees

The Individuals' Motion establishes that allowing Plaintiffs' claims to proceed would require this Court to extend *Bivens* to a new context.  *See* Individuals' Motion at 7-10.  In response, Plaintiffs argue that they are simply bringing "everyday Fourth Amendment claims," Opp. at 14, that warrant no hesitation from the Court.  This argument, however, completely ignores the Supreme Court's recent instruction that even "almost parallel circumstances" or a "similar mechanism of injury" would still indicate a new *Bivens* context.  *Egbert*, 142 S. Ct. at 1805.  Plaintiffs overlook the fact that several factors separate the present claims from those in *Bivens*.  For example, *Bivens* has never been extended to cases involving Postal Inspectors or the detention of parcels by postal employees, and Plaintiffs cite no authority indicating that it has.  Indeed, the Supreme Court has repeatedly noted that "statutory or other legal mandate under which the officer was operating" is a factor indicating a new *Bivens* context, *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1860 (2017), and has declined to extend *Bivens* to all manner of federal employees, including employees at other federal law enforcement agencies.  *See Chappell v. Wallace*, 462 U.S. 296, 304 (1983) (no Bivens against military officers); *Schweiker v. Chilicky*, 487 U.S. 412, 421 (1988) (no *Bivens* against Social Security Administration employees); *Egbert*, 142 S. Ct. at 1807 (no *Bivens* against U.S. Customs and Border Protection officer, even for alleged Fourth Amendment violations).  As the Ninth Circuit recently noted, "The dissent in Egbert does not appear to

1  be wrong in inferring the Court now sees a new *Bivens* context even if only the officer's employing
2  agency is different." *Mejia v. Miller*, 53 F.4th 501, 506 (9th Cir. 2022).
3      Similarly, Plaintiffs ask the Court to ignore *Egbert*'s mandate that the existence of an alternative
4  remedy in the form of a grievance procedure will also foreclose a *Bivens* remedy because the U.S. Postal
5  Inspection Service (USPIS) grievance procedure has, in Plaintiffs' view, insufficient deterrent effect.
6  *See* Opp. at 16 n.8.  The Supreme Court in *Egbert* made no such distinction, and found no *Bivens*
7  remedy in part because the Border Patrol had a grievance procedure almost identical to the one utilized
8  by USPIS.  *See* Individuals' Motion at 9 & n.3.  Recently, as Plaintiffs concede, the Ninth Circuit also
9  held that a similar grievance procedure foreclosed a *Bivens* remedy in light of *Egbert*.  *Pettibone v.
10 Russell*, 59 F.4th 449 (9th Cir. 2023) ("Aggrieved parties can report any alleged misconduct to the
11 Inspector General of the Department of Homeland Security, who must either investigate or refer the
12 matter to the Officer for Civil Rights and Civil Liberties.") (cited Opp. at n.8).
13     Plaintiffs also make much of Congress' "decision" to create a postal exception to Federal Tort
14 Claims Act (FTCA) claims but "take no other action in that sphere except to generally authorize civil
15 action against federal officials." Opp. at 15.  This is not accurate.  To the contrary, Congress has long
16 decided to create *no remedy* that allows suits for money damages against individual federal employees,
17 including against postal inspectors.  *See Pettibone v. Russell*, 59 F.4th 449, at *5 (9th Cir. 2023) (while
18 Congress has created a cause of action against state officials acting under color of state law, "it has not
19 created a general cause of action to redress violations of the Constitution by federal officers.").  The
20 *Egbert* Court recognized this, and also recognized that it was the role of Congress to decide whether to
21 create new causes of action.  Indeed, the *Egbert* Court reduced its analysis to a single question:  whether
22 there is even just one rational reason to think that Congress is better suited than the courts to decide
23 whether a new cause of action is appropriate.  *Egbert*, 142 S. Ct. at 1805.  While Congress may someday
24 choose to create a statutory framework to the contrary, this Court must follow binding Supreme Court
25 and Ninth Circuit precedent that presently forecloses Plaintiffs' claims.
26          **2.     No *Bivens* Remedy Exists for Claims Brought By Corporations**
27     As Plaintiff's own authority concedes, "There appear to be no cases—in the Supreme Court or
28 any other court—approving a *Bivens* claim for acts taken against a corporate entity." *Annappareddy v.*

*Pascale*, 996 F.3d 120 (4th Cir. 2021). While Plaintiffs attempt to distinguish *Life Savers Concepts Ass'n of California v. Wynar*, 387 F. Supp. 3d 989, 999 (N.D. Cal. 2019), Individuals' Motion at 10, because that case involved a corporation "bring[ing] *Bivens* suits on behalf of employees," Opp. at 13, Plaintiffs cite no example of any court allowing a *Bivens* claim by a corporation to proceed. Under *Egbert*, Congress, not the judiciary, is best suited to determine whether a cause of action should be created for corporations to assert claims directly against individual federal officials.

### C. The Individual Defendants are Entitled to Qualified Immunity on Plaintiffs' Fourth Amendment Claims

The Individuals' Motion establishes that, even if *Bivens* were extended to Plaintiffs' claims, the Individual Defendants would be entitled to qualified immunity because they did not violate any clearly established right of which a reasonable person would have known. *See* Individuals' Motion at 10-14; *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Plaintiffs' Opposition fails to show that the seizures at issue violated the law, or that the right to be free from such seizures was clearly established.

The Postal Inspectors in the present case had the requisite reasonable suspicion to detain the parcels based on their exterior characteristics. *See* Individuals' Motion at 11-13. Critically, courts assess "the totality of the circumstances" to determine whether there was reasonable suspicion, *United States v. Arvizu*, 534 U.S. 266, 273 (2002), based on how the relevant factors together would be "understood by those versed in the field of law enforcement," *United States v. Cortez*, 449 U.S. 411, 418 (1981); *see also Arvizu*, 534 U.S. at 273, 277-78—*not*, as Plaintiffs would have it, by picking apart the individual factors that formed the basis of reasonable suspicion on their own. *See* Opp. at 17-19. Here, as the allegations in Plaintiffs' Amended Complaint indicate, Defendants had reasonable suspicion to seize the parcels because the "external physical characteristics of the parcels were consistent with" others containing "controlled substances." Dkt. 33 at ¶ 57. Other factors creating reasonable suspicion were "bulging contents"; "frequently mailed parcels from the same sender/address"; "parcel destination is a known drug trafficking area"; "taped or glued on all seams"; and "parcel mailed from a known drug source area." Dkt. 33 at ¶ 91. The parcels were shipped from California, "priority mail express overnight." *Id.* These characteristics mirror the parcels at issue in *United States v. Hernandez*, 313 F.3d 1206, 1211 (9th Cir. 2002), where the Ninth Circuit found reasonable suspicion and upheld the detention

of a parcel.  Far more than simply incanting the words "drug package profile" as Plaintiffs chide, *see* Opp. at 21, the Postal Inspectors had several articulated factors that, taken together, made the seizure of the parcels reasonable.[1]  In fact, Plaintiffs' own authority recognizes the usefulness of profiles in assisting law enforcement.  *See United States v. Sokolow*, 490 U.S. 1, 10 (1989) (cited Opp. at 17) ("A court sitting to determine the existence of reasonable suspicion must require the agent to articulate the factors leading to that conclusion, but the fact that these factors may be set forth in a 'profile' does not somehow detract from their evidentiary significance as seen by a trained agent.").  Further, the length of the detention of the parcels was also reasonable.  The approximately 36-hour seizure of the parcels and two-day delay in delivery was also reasonable under the Fourth Amendment.  *See* Individuals' Motion at 13-14; *see also, e.g., Hernandez*, 313 F.3d at 1212-14 (seizure of 22 hours overnight was reasonable); *United States v. Gill*, 280 F.3d 923, 929 (9th Cir. 2002) (seizure of six days was reasonable); *United States v. Williams*, 349 F. Supp. 3d 1007, 1014 (D. Haw. 2018) (seizure of three-to-four days was reasonable; *United States v. Dass*, 849 F.2d 414, 414-15 (9th Cir. 1988) (finding seizure of 7-to-23 days unreasonable while implying that 36-hour seizure would be reasonable).

But even if this Court finds that seizures of parcels for approximately 36 hours violate the Fourth Amendment, such a right was not clearly established.  *See* Individuals' Motion at 14-15.  At the time that the seizures and detention of the parcels occurred, courts that had addressed this issue had found that seizures of a similar length or longer did not violate the Fourth Amendment.  Rather than citing authority to the contrary, Plaintiffs cite to general authority to argue that the parcels should not have been detained.  *See* Opp. at 19-20.  For example, Plaintiffs cite to *United States v. Place*, 462 U.S. 696 (1983), a case involving a 90-minute detention of luggage at an airport during a *Terry* stop, and argue that this case should have put the Postal Inspectors on notice that their detention of suspicious parcels could violate the Fourth Amendment.  But the Supreme Court "ha[s] repeatedly told courts not to define clearly established law at too high a level of generality," *City of Tahlequah v. Bond*, 142 S. Ct. 9, 11 (2021) (per curiam), and lower courts have interpreted the Supreme Court's recent rulings to meant that

---

[1] Of course, it is easy for Plaintiffs to criticize the Postal Inspectors in hindsight after the contents of the parcels were revealed via the national news media.  But the Court's analysis must be grounded in whether or not the seizures were reasonable at the time they occurred.

"a close factual precedent would be required to overcome qualified immunity." *Anderson v. Bd. of Trs. of the Cal. State Univ.*, No. C 19-06997 WHA, 2021 WL 5050262, at *4 (N.D. Cal. Oct. 29, 2021). Plaintiffs do nothing of the sort.

Other authority cited by Plaintiffs is not to the contrary. For instance, as to whether the length of detention was unreasonable, in *United States v. Gill*, cited Opp. at 20, the Ninth Circuit rejected that plaintiff's argument that the investigation of a seized parcel was "leisurely" simply because it took six days to complete. 280 F.3d at 929. Similarly, in *United States v. Dass*, 849 F.2d 414, 415 (9th Cir. 1988), cited Opp. at 20, the Ninth Circuit noted that a 36-hour detention (like the one at issue here) would have been reasonable. On the issue of whether the Postal Inspectors had reasonable suspicion to detain the parcels in the first place, the Supreme Court specifically permitted the detention of parcels for 29 hours in *United States v. Van Leeuwen*, 397 U.S. 249, 253 (1970), cited Opp. at 18, based on the external characteristics of parcels (as well as logistical hurdles in contacting officials in other jurisdictions). The Supreme Court specifically noted that "[n]o interest protected by the Fourth Amendment was invaded by forwarding the packages the following day rather than the day when they were deposited" because "[t]he significant Fourth Amendment interest was in the privacy of this first-class mail" and "that privacy was not disturbed or invaded" by the detention. *Id.* at 253.

### D. The Supreme Court Has Already Rejected Plaintiffs' Novel Reading of the Westfall Act

Faced with the fact that their claims are not cognizable under *Bivens* (and that the Individual Defendants are entitled to qualified immunity), Plaintiffs advance the creative argument that three decades of Supreme Court precedent should be set aside because, in fact, Congress had codified *Bivens* all along when it passed the Westfall Act in 1988. *See* Opp. at 22-26. No court has adopted this novel theory and this Court should reject it now. *See Hernandez v. Mesa*, 140 S. Ct. 735, 742 (2020) (observing 32 years after the Westfall Act that "no statute expressly creates a Bivens remedy"); *Wilkie v. Robbins*, 551 U.S. 537, 585 (2007) (observing 19 years after the Westfall Act that "If Congress wishes to codify and further define the *Bivens* remedy, it may do so at anytime.") (Ginsburg, J., concurring in part).

Put simply, the Westfall Act is an immunity statute that does not contain a separate cause of

action. *See, e.g.*, *Heuton v. Anderson*, 75 F.3d 357, 360 (8th Cir. 1996) ("Congress adopted the Westfall Act to confer immunity on all federal employees acting within the scope of their employment."). To determine whether the Westfall Act explicitly creates a separate right of action against federal officials, the Court should start with the plain text of the statute. *Altera Corp. & Subsidiaries v. Comm'r of Internal Revenue*, 926 F.3d 1061, 1075 (9th Cir. 2019) (under "traditional rules of statutory construction," "[w]e start with the plain statutory text."); *Young v. Grand Canyon Univ., Inc.*, 980 F.3d 814, 818 (11th Cir. 2020) ("we start with the text—and, if we find it clear, we end there as well"); *see also BP P.L.C. v. Mayor & City Council of Baltimore*, 141 S. Ct. 1532, 1541 (2021) ("Our duty is to follow the law as we find it"). Looking to the text, the Westfall Act precludes suits against federal employees acting within the scope of their office or employment with the exception of suits against the United States under the FTCA. *See* 28 U.S.C. § 2679(b)(1). The next section clarifies that preclusion does not apply to "a civil action brought against an employee of the Government . . . brought for a violation of the Constitution of the United States." *See* 28 U.S.C. § 2679(b)(2)(A). But that section (or any section of the Westfall Act for that matter) contains no explicit cause of action. Congress simply indicated that the FTCA was not the exclusive remedy for suits involving violations of the U.S. Constitution.

Plaintiffs thus are correct that Congress "left Bivens where it found it" in 1988 (*see* Opp. at 23): a judicially-created remedy subject to curtailment by later courts like any cause of action with no grounding in statute. And, taking Plaintiffs at their word that Congress passed the Westfall Act with *Bivens* in mind, *see* Opp. at 25, in the fall of 1988 when the Act was passed, there were already several examples of the Supreme Court walking back the scope of the *Bivens* remedy. *See Chappell*, 462 U.S. at 298 (cautioning that *Bivens* should not be extended where "special factors counseling hesitation" were present); *Bush v. Lucas*, 462 U.S. 367 (1983) (no *Bivens* remedy for First Amendment violations arising out of government employment); *United States v. Stanley*, 482 U.S. 669 (1987) (no *Bivens* remedy arising out of military service); *Schweiker*, 487 U.S. at 421 (no *Bivens* remedy for denial of Social Security benefits). The decades-long retreat of *Bivens* jurisprudence culminated in *Egbert*, where the Supreme Court observed that "we have indicated that if we were called to decide *Bivens* today, we would decline to discover any implied causes of action in the Constitution." *Egbert*, 142 S. Ct. at 1809.

Of course, Plaintiffs concede that their lawyers at the Institute for Justice have already presented this creative reading of the Westfall Act to the Supreme Court. And the Supreme Court squarely rejected it:

> The [Westfall] Act also permits claims "brought for a violation of the Constitution." 28 U.S.C. § 2679(b)(2)(A). By enacting this provision, Congress made clear that it was not attempting to abrogate *Bivens*, but the provision certainly does not suggest, as one of petitioners' amici contends, that Congress "intended for a robust enforcement of *Bivens* remedies." Brief for Institute for Justice as Amicus Curiae 21. Instead, the provision simply left Bivens where it found it. It is not a license to create a new Bivens remedy in a context we have never before addressed, *see Correctional Services Corp. v. Malesko*, 534 U.S. 61, 68, 122 S.Ct. 515, 151 L.Ed.2d 456 (2001).

*Hernandez*, 140 S. Ct. at n.9; *see* Opp. at 23. This Court should do the same.[2]

### E. Plaintiffs State No Facts Indicating that a Search of the Parcels Occurred

The Individuals' Motion establishes that Plaintiffs failed to plausibly plead that a search of the parcels had occurred. *See* Individuals' Motion at 16-17. Plaintiffs respond that a search occurred because "the Federal Officials' own notes make clear that [they] knew the contents of the package were, in [their] words, 'BLM MASKS.'" Opp. at 21 (quoting Dkt. 33 at ¶ 77). While Plaintiffs' Opposition claims that the Postal Inspectors knew what the parcels contained at the time of seizure, the First Amended Complaint admits that "It is not clear whether Defendants knew that the packages contained—in Defendants' words—'BLM MASKS' before seizing the packages" because the Postal Inspectors did not know what was in the parcels until Plaintiffs contacted national news media shortly after their parcels were seized. Dkt. 33 at 57, 78. Plaintiffs reference "Defendants' notes" on several occasions (*see, e.g*, Dkt. 33 at ¶ 77) but their saber-rattling in lieu of attaching the referenced document to the First Amended Complaint (a courtesy copy of which was provided to Plaintiffs prior to filing their First Amended Complaint) is likely because that document also confirms that the parcels were not opened or searched. Plaintiffs have not plausibly pled that a search occurred and cannot do so.

---

[2] Given Plaintiffs' argument that "The Westfall Act codifies claims against individual federal officials," Opp. at 23, it is curious that Plaintiffs' lawyers at the Institute for Justice joined a 2021 letter to Congress arguing "the lack of a statutory cause of action to sue federal officials for damages resulting from constitutional violations" and calling on Congress to pass a "Bivens Act" codifying the *Bivens* remedy. *See* https://hankjohnson.house.gov/sites/evo-subsites/hankjohnson-evo.house.gov/files/documents/Bivens%20act%20coalition%20letter%20final.pdf

### F. Plaintiffs Do Not Dispute that Declaratory Relief is Not Available Under *Bivens*

The Individuals' Motion establishes that Paragraphs 377 through 383 of Plaintiffs' prayer for relief ask the Court for declaratory relief, but such relief is not available under *Bivens*. See Individuals' Motion at 17. The Opposition does not dispute that these paragraphs should be struck, and accordingly, should any part of the claims against the Individual Defendants survive this motion to dismiss the Court should strike Paragraphs 377 through 383 of Plaintiffs' prayer for relief.

### G. Congress, Not the Courts, Must Act if Plaintiffs Are Left Without a Remedy

If their arguments regarding the scope of *Bivens*, qualified immunity, and the Westfall Act fail, Plaintiffs' last stand is to ask the Court to declare the Westfall Act and the FTCA unconstitutional as applied should Plaintiffs be left without a remedy for money damages.[3] *See* Opp. at 27-30. Setting aside whether there is precedent for such a declaration, there is no indication that Congress intended for every violation of a right to be compensated by money damages. Congress' decision not to codify the *Bivens* remedy, the myriad exceptions that foreclose FTCA suits in certain circumstances, and absolute immunity statutes such as 28 U.S.C. § 233(a) are just some examples. Such statutory limits may sometimes present a situation where a plaintiff is left without a remedy for money damages—which itself is not an issue for a court to resolve:

> Petitioner and some commentators argue that [the FTCA's detention of goods exception] should not be construed in a fashion that denies an effectual remedy to many persons whose property is damaged through the tortious conduct of customs officials. That contention has force, but it is properly addressed to Congress, not to this Court. The language of the statute as it was written leaves us no choice but to affirm . . ."

*Kosak v. United States*, 465 U.S. 848, 862 (1984); *see also Schweiker*, 487 U.S. at 421–22 ("The absence of statutory relief for a constitutional violation, for example, does not by any means necessarily imply that courts should award money damages against the officers responsible for the violation.").

At bottom, the question presented for the Court here is not "whether the court 'should provide for a wrong that would otherwise go unredressed.'" *Egbert*, 142 S. Ct. at 1804 (quoting *Bush*, 462 U.S. at 388) (internal citations omitted). Nor does it matter that "existing remedies do not provide complete

---

[3] Plaintiffs are not without *any* remedy, however, because USPIS maintains its hotline to report potential misconduct by Postal Inspectors and other postal employees. *See* Individuals' Motion at 9 & n.3. To date, it does not appear that Plaintiffs have availed themselves of this remedy.

relief." *Id.* Instead, as the *Egbert* Court instructed: "the court must ask only whether it, rather than the political branches, is better equipped to decide whether existing remedies should be augmented by the creation of a new judicial remedy." *Id.* (internal quotation omitted).

Congress should decide whether the new remedies sought by Plaintiffs are appropriate. Until they do so, this Court must dismiss Plaintiffs' claims.

## III. CONCLUSION

For the foregoing reasons, and those set forth in the Individuals' Motion, the Court should grant the Individual Defendants' motion and dismiss all claims in the First Amended Complaint at against the Individual Defendants. Alternatively, if any portion of the First Amended Complaint at against these defendants should survive the motion to dismiss, Defendants seek an order striking Paragraphs 377 to 383 from the First Amended Complaint's Prayer for Relief.

DATED: February 22, 2023

Respectfully submitted,

STEPHANIE M. HINDS
United States Attorney

*/s/ Michael A. Keough*
MICHAEL A. KEOUGH
Assistant United States Attorney

*Attorneys for Defendants Jeff Agster,
Eva Chan, Mark Hodges and Robin Lee*