1   ISMAIL J. RAMSEY (CABN 189820)
United States Attorney
2   PAMELA T. JOHANN (CABN 145558)
Chief, Civil Division
3   MICHAEL A. KEOUGH (NYRN 5199666)
Assistant United States Attorney
4
    450 Golden Gate Avenue, Box 36055
5   San Francisco, California 94102-3495
    Telephone: (415) 436-6878
6   Fax: (415) 436-7234
    michael.keough@usdoj.gov
7
*Attorneys for Defendant*
8
                  UNITED STATES DISTRICT COURT
9
                  NORTHERN DISTRICT OF CALIFORNIA
10
                  SAN FRANCISCO DIVISION
11

12   RENÉ QUIÑONEZ and MOVEMENT INK        ) Case No. 3:22-CV-03195-WHO
     LLC,                                   )
13                                          ) **REPLY IN SUPPORT OF**
            Plaintiffs,                      ) **MOTION TO DISMISS FOURTH AMENDED**
14                                          ) **COMPLAINT IN PART AND MOTION TO**
        v.                                   ) **STRIKE**
15                                          )
     UNITED STATES OF AMERICA,               )
16                                          )
            Defendant.                       )
17                                          )
                                            )
18   _____)

19

20

21

22

23

24

25

26

27

28

Defendant the United States of America submits the following reply in support of the Motion to Dismiss the Fourth Amended Complaint ("4AC") in Part and Motion to Strike (Dkt. 115, the "Motion") and in response to Plaintiffs' opposition to the same (Dkt. 118, the "Opposition" or "Opp.").

## I. PRELIMINARY STATEMENT

The Opposition does not move the needle on whether the new theories of liability asserted for the first time in the 4AC can survive a motion to dismiss. As set forth in detail below, the Court should grant the Motion despite the arguments in the Opposition:

*First*, the parties agree that the trespass to chattels claim can only proceed if squeezes and sniffs of U.S. mail are unreasonable searches under the Fourth Amendment to the United States Constitution. They are not. And the Opposition's attempt to impose the law of searches of a person's luggage onto searches of mail should be rejected, as the Ninth Circuit has made clear that luggage is entitled to greater Fourth Amendment protection than mail.

*Second*, the portion of Count 3 containing newly alleged tortious conduct by postal inspectors is directly linked to the detention of goods at issue. This new theory of liability falls squarely within the detention of goods exception, and the Opposition fails to rebut binding Ninth Circuit authority that supports the application of the exception.

*Third*, Plaintiffs, in any event, fail to state a claim for interference with prospective economic relations because they have still not pled sufficient facts to show knowledge of the purported business relationships on the part of USPIS officials; that is the reason the Court previously dismissed this portion of the claim. The Opposition ignores the contradictory allegations in the 4AC highlighted in the Motion and attempts to improperly introduce new allegations for the first time in the Opposition that are found nowhere in the 4AC to remedy this pleading deficiency. This is improper.

*Fourth*, there is no basis to allow alleged First Amendment violations to form the basis of an FTCA claim, and Plaintiffs' attempt to argue otherwise falls flat.

*Finally*, Plaintiffs yet again effectively concede that declaratory relief is not available in this FTCA action. The Court should yet again strike the allegations that seek declaratory relief.

1

2   **II.     ARGUMENT**

3        **A.      New Allegations of Squeezing and Sniffing are Not "Searches"**

4        The parties agree that the Court has already dismissed the claims in Count 1 except to the extent

5   the searches of the parcels in this case could be unreasonable searches under the Fourth Amendment.

6   *See* Dkt. 118 at 11.  Plaintiffs contend that this prior ruling extends to the new allegations regarding

7   sniffs and squeezes, because that conduct also constitutes an unreasonable search.  *Id.*  But the

8   allegations of squeezing or sniffing *do not* constitute searches as a matter of law.  Motion at 9-10.

9        Plaintiffs' arguments in response – that an unlawful search cannot be discretionary, and that

10  unlawful searches are not covered by the detention of goods exception – are both founded on the

11  incorrect premise that the Fourth Amendment forbids the squeezing or sniffing of U.S. mail after it

12  leaves the sender's possession.  Plaintiffs cite no relevant authority for this proposition, however.  The

13  authority cited by Plaintiffs in support of their contention is easily distinguishable because it all involves

14  personal luggage subject to a higher level of Fourth Amendment scrutiny (unlike mail).  For example,

15  *Bond v. United States*, 529 U.S. 334 (2000) (cited Motion at 8) involved a piece of luggage stored over a

16  passenger's seat on a bus.  The privacy interest available for personal luggage is undoubtedly stronger

17  than that of a parcel placed in the U.S. mail, as the Ninth Circuit has previously made clear.  *United*

18  *States v. England*, 971 F.2d 419, 420 (9th Cir. 1992) ("A person who deposits an item in the United

19  States mail retains far less of an interest in the mailed item than does a person who checks his luggage

20  for transport with a common carrier."); *see also Hernandez v. United States*, 353 F.2d 624 (9th Cir.

21  1965) (cited Motion at 8) (privacy interest in airport luggage).  Setting aside these luggage cases,

22  Plaintiffs cite no authority for their contention that squeezing a mail parcel or smelling it constitutes a

23  search under the Fourth Amendment.[1]

24        *United States v. Taylor*, No. 14-cr-00065, 2015 WL 856840, at *5 (S.D. W. Va. Feb. 27, 2015),

25

26  _____
        [1] Plaintiffs cite *United States v. Jones*, 565 U.S. 400 (2012), for the proposition that a physical
27  intrusion for the purpose of obtaining information constitutes an unlawful search.  But *Jones* involved
    intrusion into a personal vehicle to collect detailed information about a person's whereabouts.  Plaintiffs
    cite no authority extending this holding to the smelling or squeezing of mail separated from the person
28  who sent it – which is undoubtedly subject to less Fourth Amendment protection than the car and
    movements at issue in *Jones*.

may be one of the only cases that provides guidance as to whether squeezing or sniffing Express Mail parcels constitutes an unlawful search.  As the court there observed, "An expectation that the flexible outer packaging of an item handed over to postal employees will not be squeezed, even deliberately, when handled by them is simply not one that society is prepared to recognize as reasonable." *Id.* at *5 (quotation omitted).  The court in *Taylor* also noted that the squeezing occurred because the Express Mail item at issue "matched the profile for a package that may contain illegal narcotics," meaning that the detectives in *Taylor* "had a reasonable belief that [it] could contain contraband before ever touching it." *Id.* (quotation omitted).  The same factors are at issue in this case, and the Court should arrive at the same conclusion:  the Fourth Amendment does not preclude USPIS from handling and squeezing mail voluntarily placed in its possession.

Plaintiffs' analysis of the law of sniffs – whether man or dog – is similarly misguided.  *United States v. Place*, 462 U.S. 696 (1983), confirmed that a dog sniff to locate contraband is not a search under the Fourth Amendment.  *Place* did not, however, contain any discussion of whether an officer's sense of smell can violate the Fourth Amendment.  And Plaintiffs cite no authority relying on *Place* to hold that human sniffs violate the Fourth Amendment.  To the contrary, *Place* addressed the propriety of one type of sniff.  And the Ninth Circuit in *United States v. Johnston*, 497 F.2d 397 (9th Cir. 1974), held that another type of sniff – that of a human officer – also did not violate the Fourth Amendment. *Johnston* remains good law and dictates that a human officer's sense of smell does not run afoul of the Fourth Amendment.

Plaintiffs' remaining authority is similarly unavailing.  Their reliance on *United States v. Gasca-Castillo*, No. CR. 06-CR-0060-L, 2007 WL 173888, at *4 (S.D. Cal. Jan. 8, 2007) (cited Opp. at 9 n. 4) is curious.  That case involved a probe inserted into a flatbed truck that was used to puncture packages hidden within the truck to determine their contents.  *Id.* at *5.  There is no allegation that the USPIS officials here punctured the parcels at issue to determine their contents.  And, regardless, the court in *Gasca-Castillo* found that the Fourth Amendment was not violated by such a limited intrusion.  *Id. United States v. White*, 766 F.3d 1328 (9th Cir. 1985) involved an officer pressing down on the trunk of a car to determine if people were hiding inside.  The Ninth Circuit declined to determine whether that activity was a search and instead found that any intrusion was minimal and the Fourth Amendment was

1    not implicated.  *Id.* at 1332.

2         Sniffing and squeezing without intruding into a parcel does not violate the Fourth Amendment.

3    As a result, a claim based on these allegations cannot proceed in light of the applicable exceptions to the

4    FTCA's limited waiver of sovereign immunity, as recognized by this Court's prior dismissal order.

5    **B.    The Detention of Goods Exception Bars Plaintiffs' New Theory of Liability for
            Count 3**

6

7         The Motion established that new allegations of tortious conduct by Postal Inspectors Hodges and

8    Doo arising from the detention of the parcels at issue is not actionable under the detention of goods

9    exception.  Motion at 10-12.[2]  Under controlling precedent, *Ali v. Federal Bureau of Prisons*, 552 U.S.

10   214 (2008), the detention of goods exception is broadly construed to include "any" claim with

11   "expansive meaning, that is, one or some indiscriminately of whatever kind."  *Id.* at 219.  The Ninth

12   Circuit has confirmed this expansive reading, describing "the expansion of the detention of goods

13   exception by the Supreme Court [in *Ali*] to sweep within the exception all injuries associated in any way

14   with the detention of goods by all law enforcement officials."  *DaVinci Aircraft, Inc. v. United States*,

15   926 F.3d 1117, 1126 (9th Cir. 2019).  The allegedly tortious conduct committed by postal inspectors

16   was, as alleged by the 4AC, directly related to the instruction that the postal inspectors "find out what

17   happened[] and report back to some of the highest-ranking USPS and USPIS officials" while the parcels

18   were still detained.  4AC ¶ 53 (instruction to find out what happened), ¶ 55 (parcels later returned to

19   mailstream).  Plaintiffs complained-of conduct stems from the result of the instruction to "find out what

20   happened" – the investigation memoranda.  Plaintiffs also allege that they were unable to "clear their

21   names in the eyes of the social justice community . . . who only ever expressed any concerns about

22   Movement Ink arising from *the government's seizure and detention of the June 3 packages*."  4AC ¶ 82

23   (emphasis added).  These allegations of conduct stemming directly from the detention of the parcels at

24   issue is a far cry from *Cervantes v. United States*, 330 F.3d 1186 (9th Cir. 2003), where a seized car

25   containing contraband was sold to a completely different person – an independent and intervening event

26

27   _____
     [2] The Opposition does not contest that Congress intended the detention of goods exception to be
28   broad in scope and limit available claims by (1) ensuring that government activities are not disrupted by
     damages suits, (2) minimizing exposure to fraudulent claims, and (3) not extending the FTCA to suits
     where adequate remedies are available.  *See Kosak v. United States*, 465 U.S. 848, 858 (1984).

1   that foreclosed application of the exception to the new owner when the same contraband was

2   rediscovered after the sale.  But *Cervantes* has not been extended to claims involving the same goods

3   owned by the same person.  Indeed, Plaintiffs fail to address the Ninth Circuit's later clarification in

4   *Foster v. United States*, 522 F.3d 1071 (9th Cir. 2008), that *Cervantes* was inapplicable where "the

5   property belonged to Plaintiff when it was seized."  *Id.* at 1077.  Under *Foster*, the detention of goods

6   exception extends to this newly alleged tortious conduct that arose directly from the detention itself.[3]

### C.   Plaintiffs' New Allegations Still Fail to State a Claim for Interference With Prospective Economic Relations

9        The Motion also established that, even if the detention of goods exception does not apply to the

10  new allegations under Count 3, Plaintiffs still fail to state a claim with regards to the new allegations in

11  Count 3 because the newly alleged tortious conduct – alleged falsification of investigative memoranda –

12  flows directly from the detention at issue.  Motion at 12-14.  Plaintiffs do not contest that the Court

13  previously dismissed this claim as to USPIS officials because "plaintiffs have not plausibly alleged that

14  the Postal Inspection Service employees knew Quiñonez and his business."  Dkt. 80 at 12.  But while

15  Plaintiffs include conclusory allegations about USPIS's knowledge, the specific allegations are bare:

16  • "The story made national news."  4AC ¶ 53.  But the 4AC does not allege that a national

17      news story that Inspector Doo and Inspector Hodges were aware of included information

18      regarding any a business relationship between Movement Ink LLC and the Movement for

19      Black Lives or any future relationship between the two.  And to try and remedy this

20      deficiency, the Opposition for the first time names a specific article and specific

21      information contained therein.  This article is referenced nowhere in the complaint,[4] and

---

[3] Plaintiffs' remaining authority is easily distinguishable.  In *Douglas v. United States*, the Eleventh Circuit held that a claim involving withheld pay for a Federal Bureau of Prisons inmate was not "property" to which the detention of goods exception applied.  814 F.3d 1268, 1279 (11th Cir. 2016).  There is no question here that the detention of goods exception would include the parcels at issue.  *Davila v. United States* is akin to *Cervantes*:  in *Davila*, a car was briefly detained at a checkpoint without any allegations of tortious conduct, the car drove away leaving passenger Davila behind, and Davila was later arrested only after the detained good (the car) was long gone.  713 F.3d 248, 257 (5th Cir. 2013).  There was thus no connection between the detention of the vehicle, which was not alleged to be tortious, and the arrest after the car had left the checkpoint.  Compare these facts to the present case, where Plaintiffs allege that the detention of the parcels was tortious and the allegedly tortious investigatory conduct stemmed directly from that detention.

[4] Indeed, the "Perma.cc" link included in note 2 of the Opposition was not even captured until

cannot be considered incorporated by reference.  A document is only incorporated by reference when the complaint "refers extensively to the document or the document forms the basis of the plaintiff's claim."  *Pampena v. Musk*, 705 F. Supp. 3d 1018, 1037 (N.D. Cal. 2023) (considering contract at issue incorporated by reference).  The article mentioned for the first time in the Opposition, by definition, is neither referred to extensively nor does it form the basis of a claim.  And allegations in an opposition to a motion to dismiss cannot save a deficiency in the original pleading.  *Schneider v. California Dep't of Corr.*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998) ("In determining the propriety of a Rule 12(b)(6) dismissal, a court may not look beyond the complaint to a plaintiff's moving papers, such as a memorandum in opposition to a defendant's motion to dismiss.").   In any event, the 4AC does not contend that Hodges and Doo were aware of this specific article.

- "Robin Lee explained to Hodges that he diverted the four packages to USPIS and that he recognized René.  Lee also told Hodges that René shipped 'suspicious' packages in the past—but he did not provide any explanation or reason."  *Id.* ¶ 57.  Taken as true, the 4AC alleges that Robin Lee did not share any information regarding Movement Ink LLC, the nature of its business, or the identity of its customers, with USPIS officials (which the 4AC contends that Robin Lee possessed).  *See id.* ¶¶ 26-27.  The Opposition does not dispute this.

- Inspector Hodges "decided to never call René or Movement Ink."  *Id.*  ¶ 61.  The 4AC does not allege that Inspector Hodges or Inspector Doo spoke directly to Plaintiffs to receive the same information allegedly possessed by Robin Lee.  The Opposition does not dispute this.

But the Opposition nevertheless contends that Hodges and Doo "knew the nature of Movement Ink's business and their activism," and "knew that Movement Ink's business relationships with M4BL were implicated."[5]  4AC ¶ 63.  Looking past these conclusory assertions, the actual allegations in the

---

September 17, 2024, long after the 4AC was filed and only after the Motion was filed.

[5] The 4AC also alleges that Inspector Hodges and Inspect Doo "knew that Congresswoman

4AC do not support such a conclusion.  The 4AC clearly alleges, as Plaintiffs have long contended, that Robin Lee possessed information regarding Movement Ink LLC and its customers and future business. 4AC ¶¶ 28-29.  But the 4AC also contends that Robin Lee *never shared* this information with Inspector Hodges and Inspector Doo (4AC ¶ 57), and the Opposition does not contest this.  The 4AC also confirms (and the Opposition does not contest) that USPIS never spoke to Plaintiffs directly.  4AC ¶ 61. And the 4AC contains no allegation that a national news story included information regarding any prospective relationship with Movement for Black Lives or any other entity.  The Opposition also does not contest that even if an allegation that Inspector Hodges and Inspector Doo knew that business relationships were "implicated" was enough to meet the knowledge requirement to plead an intentional interference claim (it is not), this conclusory allegation is directly contradicted by the other, more detailed assertions in the 4AC listed in detail above.  *See Maquet Cardiovascular LLC v. Saphena Med.*, Inc., No. C 16-07213 WHA, 2017 WL 2311308, at *4 (N.D. Cal. May 26, 2017) (allegation that defendant was "aware" of alleged business relationships was insufficient to plead knowledge).

Plaintiff asks the Court to hold their pleading to a "low bar."  Opp. at 14.  But even if the Court sets the bar as low as *Iqbal*  and *Twombly* will allow, the allegations contained in the 4AC do not state a claim for intentional interference with prospective economic relations.

### D.    Plaintiffs Fail to Show that Claims Grounded in the First Amendment Can Proceed Under the FTCA

Plaintiffs cannot seek damages based on violations of the First Amendment as part of their interference claim.  *See* Motion at 14-15.  The FTCA does not extend its limited waiver of sovereign immunity to claims "brought for a violation of the Constitution of the United States."  28 U.S.C. § 2679(b)(2)(A); *Holly v. Jewell*, 196 F. Supp. 3d 1079, 1091-92 (N.D. Cal. 2016) (dismissing First Amendment claim for monetary damages as "barred by the doctrine of sovereign immunity").  In response, the Opposition includes a short footnote arguing that the First Amendment allegations are

---

Barbara Lee had submitted a congressional inquiry on René's behalf, and knew that there was a litigation risk arising from the packages' treatment."  4AC ¶ 63.  The Opposition does not contest that that the existence of Congresswoman Lee's inquiry alone could not have informed Inspector Hodges and Inspector Doo of Movement Ink LLC's business relationships or prospects, nor does the Opposition dispute that a vague assertion of "litigation risk" does not constitute a plausible allegation that Inspector Hodges and Inspector Doo knew that these relationships at the time of the allegedly tortious conduct.

1   simply to defeat the application of the discretionary function exemption to Count 3, as the Fourth

2   Amendment is relevant to Count 1.  *See* Motion at 14, n. 9.  First, the Motion does not assert the

3   discretionary function exception with regards to Count 3.  But regardless, the Fourth Amendment is only

4   relevant to Count 1 because the detention of goods exception bars trespass claims for all conduct save a

5   search – and the Fourth Amendment is the relevant marker of whether a search occurred.  *See* Dkt. 80 at

6   10.  No analogous situation exists for Count 3.  The addition of First Amendment allegations is simply

7   another attempt to re-insert a theory of constitutional liability that the Court has already rejected.  *See*

8   Dkt. 91 at 5 (observing that "[t]he Supreme Court has expressly held that to be actionable under the

9   FTCA, 'a claim must allege . . . that the United States would be liable to the claimant as a private person

10  in accordance with the law of the place where the act or omission occurred' and a constitutional tort

11  claim 'could not contain such an allegation.'") (quoting *FDIC v. Meyer*, 510 U.S. 471, 477-78 (1994)).

12  The same result is appropriate here, and the Court should dismiss all claims to the extent they rely on

13  allegations of a First Amendment violation.

14  **III.    CONCLUSION**

15          For the foregoing reasons, and those set forth in the Motion, the Court should grant Defendant's

16  motion and dismiss Counts 1 and 3 in part.  The Court should also strike Paragraphs 121 to 123 from the

17  4AC's Prayer for Relief.[6]

18  DATED:          October 4, 2024

19                                                           Respectfully submitted,

20                                                           ISMAIL J. RAMSEY
21                                                           United States Attorney

22                                                           */s/ Michael A. Keough*
                                                             MICHAEL A. KEOUGH
23                                                           Assistant United States Attorney

24                                                           *Attorneys for Defendant*

25

26

27  _____

28      [6] Yet again, Plaintiffs do not contest the separate motion to strike.  *See* Motion at 15-16.
    Declaratory relief is not available under the FTCA, and the Court should strike Paragraphs 121 to 123 of
    the 4AC's Prayer for Relief.