UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RENE QUINONEZ, et al.,<br><br>    Plaintiffs,<br><br>        v.<br><br>UNITED STATES OF AMERICA, et al.,<br><br>    Defendants. | Case No. 22-cv-03195-WHO<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS IN PART AND DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>Dkt. Nos. 115, 119, 121 |

Plaintiffs René Quiñonez and Movement Ink LLC ("Movement Ink") (the "plaintiffs") allege that United States Postal Inspection Service ("USPIS") officers unlawfully seized, detained, and searched four of plaintiffs' packages that contained masks screen-printed with political messages.[1] After four amended complaints, two claims remain: Claim 1 (Trespass to Chattels) and Claim 3 (Interference with Prospective Economic Relations). In their fourth amended complaint ("4AC"), plaintiffs add a novel theory of liability to Claim 1—they now propose that USPIS officers illegally searched their packages both by opening them and by "squeezing" and "sniffing" them. Plaintiffs move for summary judgment on Claim 1 in its entirety; defendant United States of America moves to dismiss the novel "squeeze and sniff" theory of liability. The government also moves to dismiss Claim 3 in part and moves to strike part of the 4AC.[2]

The "squeeze and sniff" theory of trespass liability is implausible, so the motion to dismiss Claim 1 to the extent that it is based on that theory is GRANTED and plaintiffs' motion for

---

[1] The United States is the only defendant named in the Fourth Amended Complaint.

[2] The plaintiff has also filed administrative motions to seal associated with its papers, which the defendant opposes. *See* Dkt. Nos. 120, 129. I will resolve those motions at a later date.

summary judgment on the same is DENIED.  Disputes of material fact about whether the packages were ever opened preclude summary judgment on the remainder of Claim 1.  The motion to dismiss Claim 3 is DENIED because plaintiffs have plausibly alleged that USPIS officials knew of their business relationships when they allegedly interfered with the plaintiffs' economic relations, and the detention of goods exception does not apply.

## BACKGROUND

### A.     Factual Background

The parties are familiar with most of the allegations and the procedural history of this case, so I will not repeat it.  I will only outline what is new to the 4AC and relevant to the motions pending before the court.

With respect to Claim 1, the plaintiffs now allege that USPIS personnel Carlos Ruiz and Steven Farjado searched the parcels by "squeezing" and "sniffing" them.  *See* 4AC ¶¶ 35, 37, 92.  They allege this in the alternative to the other theory of search that proposes that USPIS law enforcement officers searched the parcels by opening them.

With respect to Claim 3, the plaintiffs now allege that after a national news story broke about the parcels and each parcel was returned to the mail stream, USPIS Postal Inspector Mark Hodges documented a conversation with Robin Lee, the clerk who originally handled the parcels, where he understood Lee as saying that Lee had diverted the four parcels.  *Id.* ¶ 57.  After he heard this from Lee, Hodges allegedly directed Postal Inspector Aaron Doo to draft an investigative memorandum about the parcels that stated a "whole different story about what happened," implying that someone *other* than Lee had diverted the parcels.  *Id.* ¶¶ 62-64.  The plaintiffs allege that when Hodges and Doo acted, they "knew the nature of Movement Ink's business and their activism," "knew that Movement Ink's business relationships with [Movement for Black Lives] were implicated," and were aware of national news stories about plaintiffs' business.  *See* 4AC ¶¶ 38, 53, 58-60.  This harmed plaintiffs' prospective economic relations because "[b]ut for [Hodges' and Doo's] fabricated narrative about the source of the baseless diversion of the June 3 political mask shipments to law enforcement, [plaintiffs] could have put the word out about what actually happened."  *Id.* ¶ 81.

### B. Procedural Background

In the Order Granting in Part and Denying in Part Defendants' Motion to Dismiss the SAC ("Prior Order"), I allowed Claim 1 to proceed to the extent that the plaintiffs alleged that the parcels "were searched in violation of the Fourth Amendment." Prior Order [Dkt. No. 80] 10. I dismissed Claim 3 in part, allowing it to proceed solely as to United States Postal Service ("USPS") employees who were alleged to have "purportedly kn[own] Quiñonez, his business, and his purpose in shipping the packages at issue." Prior Order 12-13. I dismissed it to the extent that it sought to extend liability to the USPIS law enforcement officers because plaintiffs had failed to plausibly allege in the SAC that "the [USPIS] employees knew Quiñonez and his business." *Id.* at 12-13. I also dismissed Claims 4 and 7 with leave to amend, and I struck the part of the SAC that sought declaratory relief. *See id.* at 13, n.4.

The 4AC realleges Claims 1 and 3 with the "squeeze and sniff" allegations and reasserts the request for declaratory relief. The plaintiffs seek summary judgment on Claim 1. *See* Pl's Motion for Partial Summary Judgment ("MSJ") [Dkt. No. 119]. The government opposes summary judgment because there are material facts in dispute, moves to dismiss Claim 1 to the extent that it seeks to impose trespass liability for the USPIS officers "squeezing" and "sniffing" the packages, moves to dismiss Claim 3 to the extent that it asserts economic interference liability against USPIS law enforcement officers, and moves to strike plaintiff's renewed request for declaratory relief. *See* Motion to Dismiss 4AC in Part and to Strike ("MTD") [Dkt. No. 115]; Defendant's Opposition to MSJ ("MSJ Oppo.") [Dkt. No. 125].

## LEGAL STANDARD

### I. RULE 12(B)(1)

A motion to dismiss filed pursuant to Rule 12(b)(1) is a challenge to the court's subject matter jurisdiction. *See* Fed. R. Civ. P. 12(b)(1). "Federal courts are courts of limited jurisdiction," and it is "presumed that a cause lies outside this limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). The party invoking the jurisdiction of the federal court bears the burden of establishing that the court has the requisite subject matter jurisdiction to grant the relief requested. *Id*.

3

1   A Rule 12(b)(1) challenge may be facial or factual. *White v. Lee*, 227 F.3d 1214, 1242 (9th
2   Cir. 2000). In a facial attack, the jurisdictional challenge is confined to the allegations pled in the
3   complaint. *See Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004). The challenger asserts that
4   the allegations in the complaint "are insufficient on their face to invoke federal jurisdiction." *See*
5   *Safe Air Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). To resolve facial
6   attacks, the court assumes that the allegations in the complaint are true and draws all reasonable
7   inferences in favor of the party opposing dismissal. *See Wolfe*, 392 F.3d at 362. "By contrast, in a
8   factual attack, the challenger disputes the truth of the allegations that, by themselves, would
9   otherwise invoke federal jurisdiction." *Safe Air*, 373 F.3d at 1039. To resolve factual attacks, the
10  court "need not presume the truthfulness of the plaintiff's allegations." *Id*. (citation omitted).
11  Instead, the court "may review evidence beyond the complaint without converting the motion to
12  dismiss into a motion for summary judgment." *Id*. (same). Once the moving party has made a
13  factual challenge by offering affidavits or other evidence to dispute the allegations in the
14  complaint, the party opposing the motion must "present affidavits or any other evidence necessary
15  to satisfy its burden of establishing that the court, in fact, possesses subject matter jurisdiction." *St.*
16  *Clair v. City of Chico*, 880 F.2d 199, 201 (9th Cir. 1989); *see also Savage v. Glendale Union High*
17  *Sch. Dist*. No. 205, 343 F.3d 1036, 1039 n.2 (9th Cir. 2003).

## II.     RULE 12(B)(6)

Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when the plaintiff pleads facts that allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). There must be "more than a sheer possibility that a defendant has acted unlawfully." *Id*. While courts do not require "heightened fact pleading of specifics," a plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555, 570. In deciding whether the plaintiff has stated a claim upon which relief can be granted, the court accepts his allegations

4

1  as true and draws all reasonable inferences in his favor. *See Usher v. City of Los Angeles*, 828 F.2d
2  556, 561 (9th Cir. 1987).
3        However, the court is not required to accept as true "allegations that are merely conclusory,
4  unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536
5  F.3d 1049, 1055 (9th Cir. 2008). If the court dismisses the complaint, it "should grant leave to
6  amend even if no request to amend the pleading was made, unless it determines that the pleading
7  could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127
8  (9th Cir. 2000). In making this determination, the court should consider factors such as "the
9  presence or absence of undue delay, bad faith, dilatory motive, repeated failure to cure
10 deficiencies by previous amendments, undue prejudice to the opposing party and futility of the
11 proposed amendment." *Moore v. Kayport Package Express*, 885 F.2d 531, 538 (9th Cir. 1989).

### III.  RULE 12(F)

Under Rule 12(f) of the Federal Rules of Civil Procedure, the Court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." The function of a motion to strike pursuant to Rule 12(f) is "to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial." *Whittlestone, Inc. v. Handi–Craft Co.*, 618 F.3d 970, 973 (9th Cir. 2010) (citation omitted).

### IV.  SUMMARY JUDGMENT

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A moving plaintiff must show the absence of a genuine issue of material fact with respect to an essential element of a defense on which the non-moving party will bear the burden of persuasion at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this showing, the burden then shifts to the party opposing summary judgment to identify "specific facts showing there is a genuine issue for trial." *Id.* at 324. The party opposing summary judgment must then present affirmative evidence from which a jury could return a verdict in that party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986). The court draws all reasonable factual inferences in favor of the non-movant. *Id.* at 255. "Credibility determinations,

1  the weighing of the evidence, and the drawing of legitimate inferences from the facts are" for trial.
2  *Id*. However, conclusory and speculative testimony does not raise genuine issues of fact and is
3  insufficient to defeat summary judgment. *See Thornhill Publ'g Co. v. GTE Corp.*, 594 F.2d 730,
4  738 (9th Cir. 1979).

## DISCUSSION

### A. Claim 1 (Trespass to Chattels)

Claim 1 is plaintiffs' Federal Tort Claims Act ("FTCA") claim for trespass to chattels. The FTCA waives the sovereign immunity of the United States for "certain torts committed by federal employees acting within the scope of their employment." *Brownback v. King*, 141 S. Ct. 740, 746 (2021) (citation and quotations omitted). That waiver, however, "is subject to several exceptions." *Myles v. United States*, 47 F.4th 1005, 1011 (9th Cir. 2022); *see also* 28 U.S.C. § 2680 (listing exceptions). "If one of the exceptions applies, the bar of sovereign immunity remains." *Dolan v. U.S. Postal Serv.*, 546 U.S. 481, 485 (2006).

Plaintiffs argue that they are entitled to summary judgment on Claim 1. First, they contend that the undisputed facts show that USPIS officers opened their packages and searched them, and in so doing committed the tort of trespass to chattels. Second, they assert that the parcels were also searched when USPIS officers Carlos Ruiz and Steven Fajardo squeezed and sniffed them. 4AC ¶¶ 35-37, 92. While these theories of liability are pleaded in the alternative, they argue that they are entitled to summary judgment under both theories. The government opposes summary judgment because there are disputed material facts and moves to dismiss to the extent that Claim 1 is asserted under the "squeeze and sniff" theory.

#### 1. Disputes of Material Fact Preclude Summary Judgment on Claim 1

Disputes of material fact exist over whether USPIS officers opened plaintiffs' packages while they were detained. Plaintiffs claim that if I strike the declaration of USPIS Postal Inspector Jeffery Agster as a sham affidavit in light of his earlier 30(b)(6) deposition testimony, then "USPIS's own data, provided by interrogatory response, shows that in 2020 the agency opened every single one of the 50,832 packages it detained under its [Administrative Nonmailability Protocol ("ANP")]—the very protocol under which Plaintiffs' four packages were detained.

6

1  Accordingly, with no warrant, consent, or warrant exception for those openings, the packages
2  'were searched in violation of the Fourth Amendment,' . . . and no FTCA exception bars liability
3  for those opening-based trespasses to Plaintiffs' chattels[.]" MSJ 1; *see also* Interrogatory
4  Response [Dkt. No. 120-4] at p. 9.  But I find nothing inconsistent between Agster's deposition
5  testimony cited by plaintiffs and his declaration, let alone any differences that are so clear and
6  unambiguous that I should strike the declaration.  *See Kyles v. Baker*, 72 F. Supp. 3d 1021 (N.D.
7  Cal. Oct. 31, 2014).

8  Agster prepared a chart in response to an interrogatory that plaintiffs appear to misread.
9  *See* Declaration of Jeffery Agster ("Agster Decl.") ¶ 4 (dated October 4, 2024); *see also*
10 Interrogatory Response at p. 9 (chart).  The chart indicates that 62 parcels were assessed by USPIS
11 pursuant to its Administrative Non-Mailability Protocol ("ANP") and returned to the mail stream
12 without being opened during the relevant time period, and the declaration explains Agster's
13 conclusion that the four parcels in question were among those 62.  He never said anything
14 different.  That is also consistent with the testimony from the USPIS contractors Stephen Farjado
15 and Carlos Ruiz, who handled the parcels on June 4, 2020.  *See* Dkt. No. 119-3 (Farjado
16 Deposition) at 122:20-24; Dkt. No. 119-4 (Ruiz Deposition) at 22:2-4.  And Mark Hodges, who
17 handled the parcels on June 5, 2020, has stated that he did not open them, saw no indication that
18 they had been opened, and returned them to the normal mailstream unopened.  Declaration of
19 Mark Hodges ("Hodges Decl.") [Dkt. No. 125] 5:12-21.  Moreover, the USPIS keeps a record of
20 all parcels opened under the ANP, and USPIS does not have a record of the parcels being opened.
21 *See* Angster Decl.  All of this establishes, at a bare minimum, that there is a material dispute
22 whether the packages were opened.  That conclusion would remain whether I strike Agster's
23 testimony or not, given the other evidence.[3]

### 2.     The "Squeeze and Sniff" Theory of Trespass is Not Plausible

25 Plaintiffs' new theory of trespass to chattels in the 4AC is that USPIS officers unlawfully

---

[3] The government insists that "[a]ll available evidence, including the deposition testimony of everyone who touched the parcels as part of USPIS's assessment of the parcels, indicates that the four parcels at issue were not opened." Opposition to Plaintiff's Partial MSJ ("MSJ Oppo.") [Dkt. No. 125].

searched their packages by squeezing and sniffing them. "Squeezing and sniffing" mail parcels does not constitute "search[ing]" under the Fourth Amendment, and therefore any attempt at extending liability against the government on this theory is barred by FTCA exceptions, specifically, the discretionary function exception and the detention of goods exception.

USPIS officer Farjado squeezed three packages and Ruiz squeezed and sniffed the fourth. *See* MSJ Ex. C (Farjado Deposition) at 113; MSJ Ex. D (Ruiz Deposition) at 83, 116. They did so to obtain information about the package's contents. Plaintiffs identify the following testimony from them to support the squeeze and sniff search theory:

- "Fajardo testified that because of the Covid-19 pandemic, he was not sniffing packages near his face. Ex. C, Fajardo Depo. at 137. But he explained that 'there [are] some packages that you can smell the odor of marijuana from without getting near the package,' though Movement Ink's packages did not fit that description. Ex. C, Fajardo Depo. at 110. Because the packages 'did not have that strong stench of marijuana,' Fajardo 'needed to be a little bit more thorough about deciding whether to release [them] or detain [them].' Ex. C., Fajardo Depo. at 84. And part of that investigatory thoroughness into the packages' contents entailed learning that they 'had a spongy feel when squeezed' . . . Ex. C, Fajardo Depo. at 113"; and
- "Ruiz testified that he too 'squeezed' one of Movement Ink's packages 'to inspect it,' whereby he learned that 'it was a little mushy and the contents . . . seemed to be a little mushy inside.' Ex. D, Ruiz Depo. at 116. His investigatory squeezing of the package was to decide whether he should proceed to deem it suspiciously 'bulging.' Ex. D, Ruiz Depo. at 28–29. And Ruiz accompanied that investigatory squeezing with his customary practice of sniffing packages closely enough not only to determine if they contained marijuana, which he deemed 'easy,' but so closely as to ascertain the 'distinctive' smells of cocaine, methamphetamines, and heroin; indeed, his sniffing was so extensive as to try and distinguish between acetone in nail polish remover versus the 'industrial' variety. Ex. D, Ruiz Depo. at 64–66."

MSJ 10-11. These actions do not constitute "searches" and fall within the discretionary function and detention of goods exceptions.

Plaintiffs cite *United States v. Jones*, 565 U.S. 400 (2012) for the proposition that the "[g]overnment commits a search whenever it physically intrudes on constitutionally protected property for the purposes of obtaining information." *Jones*, 565 U.S. at 404-05. In *Jones*, the United States Supreme Court held that the attachment of a Global-Positioning-System (GPS) tracking device to a vehicle, and the subsequent use of that device to monitor a vehicle's

8

movement on public streets, constituted "search" within the meaning of the Fourth Amendment. *See generally*, *Jones*, 565 U.S. 400. The search that the Court considered in *Jones* is a very different kind of search. It does not involve squeezing and sniffing mail that plaintiffs have voluntarily placed in the stream of commerce beyond their possession.

Plaintiffs try to draw a connection between *Jones* and this case by referencing *Ex Parte Jackson*, 96 U.S. 727 (1877), where the Supreme Court held that "[t]he constitutional guaranty of the right of the people to be secure in their papers against unreasonable searches and seizures extends to their papers, thus closed against inspection, wherever they may be." *Ex Parte Jackson*, 96 U.S. at 733. But *Jackson* is not persuasive; there is no authority from the last 150 years where a court has interpreted it (or any other case) to mean that individuals have the kind of heightened privacy interest that the plaintiffs propose today in parcels sent through the mail.

Nor is *Hernandez v. United States*, 353 F.2d 624 (9th Cir. 1965) helpful to plaintiffs. Plaintiffs offer *Hernandez* for the principle that "manipulat[ing]" personal property by "press[ing] the sides together" or "squeezing" it constitutes a "search," *see Hernandez*, 353 F.2d at 626, but that case involved personal luggage, not mail. In *Hernandez*, defendant was convicted of transporting and concealing narcotics. On appeal, he argued that his bags had been unlawfully searched when investigating officers, upon arrival at the scene, squeezed and sniffed the air escaping from his personal luggage. The bags were not opened until later, after the investigating officer had smelled drugs, called the narcotics team, and made an arrest. *See id.* at 627. The Ninth Circuit held that squeezing a piece of personal luggage did constitute a search, in large part because "[t]he contents of the bags were not exposed to [the investigating officer's] sight or smell before the bags were squeezed," and the officer "detected the odor of marijuana as a result of an 'exploratory investigation,' an 'invasion or quest,' a 'prying into hidden places for that which was concealed,'" all of which is conduct that courts have repeatedly held to be a "search." *Id.*

Individuals have a heightened property interest in personal luggage. But as the Ninth Circuit held in *United States v. England*, 971 F.2d 419, 420 (9th Cir. 1992), "[a] person who deposits an item in the United States mail retains far less of an interest in the mailed item than does a person who checks his luggage for transport with a common carrier."

The only authority provided by either party that considers what privacy interest an individual has in their mail comes from a district court in West Virginia. *See U.S. v. Taylor*, 2015 WL 856840 (S.D.W.V. Feb. 27, 2015). There, the defendant sought to suppress the contents of a mail parcel that was addressed to him. *See Taylor*, 2015 WL 856840, at *1. A detective had squeezed the package and felt a cardboard box inside that the detective suspected contained pills, which had led to an investigation revealing that the defendant had unlawfully received narcotics. Defendant argued that he had a reasonable expectation of privacy in the package that was addressed to him, and that the detective exceeded the kind of contact that defendant could have expected.

The court considered the United States Supreme Court's reasoning in *United States v. Bond*, 529 U.S. 334 (2000), where the Court outlined the issues in Fourth Amendment analysis in a case concerning personal luggage: "Our Fourth Amendment analysis embraces two questions. First, we ask whether the individual, by his conduct, has exhibited an actual expectation of privacy; that is, whether he has shown that he sought to preserve something as private . . . . Second, we inquire whether the individual's expectation of privacy is one that society is prepared to recognize as reasonable." *Bond*, 529 U.S. at 338 (citations omitted). The court in *Taylor* noted that other courts have relied on *Bond* to find a reasonable expectation that personal luggage "will not be felt in an exploratory manner from the outside when that luggage is traveling in a place exposed to the public but near to the defendant's person," but the court was "unable to find any reported cases in which *Bond* has been applied in the context of the squeezing of a mail package," *Taylor*, at *4. It held that "[a]n expectation that the flexible outer packaging of an item handed over to postal employees will not be squeezed, even deliberately, when handled by them is not 'one that society is prepared to recognize as reasonable.'" *Id.* at *5 (quoting *United States v. Bond*, 529 U.S. 334, 388 (2000)).

I agree with *Taylor*. In the absence of any authority to the contrary, I conclude that the squeezing or sniffing of the plaintiffs' packages does not constitute a search, lawful or otherwise. As the court in *Taylor* wrote, "[t]he expectation of privacy from exploratory surface touching is much greater in an item that is within the owner's immediate physical control than in an item that

someone entrusts to an unknown number of third parties for delivery two states away." *Taylor*, at *5. In order to safely and securely deliver the mail, it is eminently reasonable for postal inspectors to handle and smell packages, and it would be wholly inappropriate to open a new theory of liability based on a practice that has obvious utility in protecting the public and government employees.

Defendant's motion to dismiss Claim 1 to the extent that it asserts a "squeeze and sniff" theory of liability is GRANTED without leave to amend. Plaintiff's motion for summary judgment on Claim 1 is DENIED on both theories.

### B.    Claim 3 (Interference with Prospective Economic Relations)

Defendant moves to dismiss Claim 3 to the extent that it seeks to impose liability upon USPIS officers because the plaintiffs fail to state a claim and their claim is barred by the detention of goods exception. I will address both arguments.

#### 1.    Plausibility

To state a claim for tortious interference with prospective economic relations, a plaintiff must plausibly show: (1) an economic relationship between the plaintiff and a third party, with the probability of future economic benefit to the plaintiff; (2) *the defendant's knowledge of that relationship*; (3) intentional acts by the defendant designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) economic harm to the plaintiff proximately caused by the defendant's acts. *CRST Van Expedited, Inc. v. Werner Enters., Inc.*, 479 F.3d 1099, 1107-08 (9th Cir. 2007) (citation omitted) (emphasis added). Today, defendant only challenges the second element, "defendant's knowledge of the relationship." *See generally* MTD.

In the Prior Order, I explained that the plaintiffs had not pleaded facts that would support interference liability against the USPIS officers because plaintiffs had failed to allege that the USPIS officers who detained their packages had any *knowledge* of the plaintiffs' business or of any potential benefit that the plaintiffs might realize related to the packages' delivery. Prior Order at 12 (explaining that "plaintiffs have not plausibly alleged that the Postal Inspection Service employees knew Quiñonez and his business."). I allowed Claim 3 to proceed as to conduct by

11

USPS employees, but not USPIS officers.[4]

Now, the plaintiffs allege that when USPIS Inspector Hodges ordered USPIS Inspector Doo to write an investigative memorandum about the packages' detention (an action that serves as the basis for plaintiff's theory of Claim 3), both Hodges and Doo "knew the nature of Movement Ink's business and their activism, knew that Movement Ink's business relationships with M4BL were implicated, knew that Congresswoman Barbara Lee had submitted an inquiry on [Quiñonez's] behalf, and knew there was a litigation risk arising from the packages' treatment." 4AC ¶ 63.

The government protests that these allegations do not sufficiently show that the USPIS officers Hodges and Doo had knowledge of plaintiffs' business and business relationships; it argues that if I "look past" these "conclusory assertions," I will recognize that they do not align with the other allegations throughout the 4AC. *See* MTD 13:10-14:17. While I agree that the allegations are sparse, they are not so conclusory or contradictory as the government suggests.[5]

The government argues that because the 4AC alleges that Robin Lee possessed information about Movement Ink LLC and its customers and future businesses, and also alleges that Lee never shared this information with Hodges and Doo, the allegation that Hodges and Doo knew about plaintiffs' business is implausible. *See* MTD 14:5-8. But Hodges and Doo may have learned about plaintiffs' business and business relationships in other ways. For example, the 4AC also alleges that the story about the plaintiffs' packages being detained "made national news," which "result[ed] in [Hodges] . . . being admonished by his supervisors . . . to immediately return

---

[4] The government does not challenge my prior ruling as to the USPS employees; it seeks to dismiss Claim 3 to the extent that it proceeds against USPIS officers. Plaintiffs say that they discovered USPIS officers Hodges' and Doo's alleged misconduct after *they* filed their papers related to the defendant's motion to dismiss their third amended complaint, and as such, allege it for the first time now. *See* Opposition to MTD [Dkt. No. 118] 12, n.7.

[5] Defendant compares the allegations in this case to those in *Maquet Cardiovascular LLC v. Saphena Med., Inc.*, 2017 WL 2311308 (N.D. Cal. May 26, 2017), a case where the court considered the plausibility of interference claims like the plaintiffs' claims here. That case is distinguishable. In *Maquet*, the plaintiffs failed to identify what entity the defendants supposedly knew them to be doing business with. *See Maquet*, 2017 WL 2311308, at *4. Here, the plaintiffs have identified the Movement for Black Lives as the entity that they were doing business with, and the entity that they allege Hodges and Doo *knew* they were doing business with. 4AC ¶ 63.

12

the packages to the mail stream, find out what happened, and report back[.]" 4AC ¶ 53.  It is plausible that Hodges and Doo learned about plaintiffs' business relationships from someone other than Lee.

The plaintiffs have plausibly alleged that Hodges and Doo had knowledge of their business and business relationships.  Whether they truly did and how they came to be in possession of that knowledge is a question for discovery.

### 2. Detention of Goods Exception

The government argues that even if Claim 3 has been plausibly alleged against the USPIS officers, it runs up against the detention of goods exception to FTCA liability.

The plaintiffs allege that after their packages were returned to the mail stream, in the context of the investigation that followed, USPIS officers Hodges and Doo misrepresented what had led to the plaintiffs' packages being detained.  According to the 4AC, after USPIS officers Hodges, Farjado and Ruiz were admonished for detaining the packages, Hodges met with Lee (a clerk) to ask him why he detained the packages.  Lee provided him with an explanation, including that he recognized Quiñonez and thought that Quiñonez had shipped suspicious packages in the past.  4AC ¶¶ 55-57.

Nearly two weeks later, in the wake of news coverage about the incident, Hodges allegedly ordered USPIS Inspector Doo to write a new investigative memorandum stating different reasons than Lee had relayed to Hodges about why the packages were detained.  *Id.* ¶¶ 62-64.  Doo wrote that it was not Lee who diverted the packages but another individual who never interacted with customers, and that that individual had provided a long list of justifications for detention that Lee had never expressed. 4AC ¶¶ 62, 64-65.  The plaintiffs argue that this constituted interference with their prospective economic relations because it prevented plaintiffs' business partners from understanding what had happened with respect to the delayed packages and law enforcement's involvement with Movement Ink LLC.

As discussed, their claim is plausibly alleged.  *See supra* Section (B)(1).  The question is whether the FTCA's detention of goods exception reaches the USPIS officers alleged interference to the extent that it happened after plaintiffs' parcels were already released back into the mail

13

1  stream and no longer detained.

2  The FTCA waives the sovereign immunity of the United States for "certain torts
3  committed by federal employees acting within the scope of their employment." *Brownback v.*
4  *King*, 141 S. Ct. 740, 746 (2021) (citation and quotations omitted). That waiver, however, "is
5  subject to several exceptions." *Myles v. United States*, 47 F.4th 1005, 1011 (9th Cir. 2022); see
6  also 28 U.S.C. § 2680 (listing exceptions). "If one of the exceptions applies, the bar of sovereign
7  immunity remains." *Dolan v. U.S. Postal Serv.*, 546 U.S. 481, 485 (2006).

8  The FTCA excludes from its waiver of sovereign immunity "[a]ny claim arising in respect
9  of the assessment or collection of any tax or customs duty, or the *detention of any goods*,
10 merchandise, or other property by any officer of customs or excise or any other law enforcement
11 officer . . . ." 28 U.S.C. § 2680(c) (emphasis added). Courts have interpreted section 2680(c)'s
12 "detention of goods exception" broadly, to give effect to Congress's goals in limiting the scope of
13 claims available under the FTCA by: (1) ensuring that government activities are not disrupted by
14 damages suits, (2) minimizing exposure to fraudulent claims, and (3) not extending the FTCA to
15 suits where adequate remedies are available. *See Kosak v. United States*, 465 U.S. 848, 858
16 (1984).[6]

17 The government argues that the Ninth Circuit has described "the expansion of the
18 detention of goods exception by the Supreme Court [in *Ali v. Federal Bureau of Prisons*, 552 U.S.

---

[6] The United States Supreme Court held that "[s]ection 2680(c) forecloses lawsuits against the United States for the unlawful detention of property by 'any,' and not just 'some,' law enforcement officials." *See Ali v. Federal Bureau of Prisons*, 552 U.S. 214, 228 (2008). The Court's decision in *Ali* abrogated a D.C. Circuit decision that held that postal inspectors were *not* covered by the detention of goods exception, *Bazuaye v. United States*, 83 F.3d 482 (D.C. Cir. 1996), *abrogated by Ali*, 552 U.S. at 217.

While the government points to no case where the Ninth Circuit has considered this question specifically, it is correct that the Ninth Circuit has recognized that the detention of goods exception applies to a wide range of law enforcement officials, spanning from officials in the Federal Aviation Administration (see *United States v. Lockheed L-188 Aircraft*, 656 F.2d 390, 397 (9th Cir. 1979), to a Bureau of Prisons official who had detained eyeglasses bound for an incarcerated individual (see *Bramwell v. U.S. Bureau of Prisons*, 348 F.3d 804 (9th Cir. 2003). I do not doubt that the detention of goods exception could apply to USPIS officials; I simply do not find that it applies to the USPIS officers' conduct in this case.

14

214 (2008)] to sweep within the exception all injuries associated in any way with the detention of goods by all law enforcement officials." *DaVinci Aircraft, Inc. v. United States*, 926 F.3d 1117, 1126 (9th Cir. 2019). It insists that Hodges' (and other USPIS officials') actions with respect to these alleged misrepresentations were very much associated with the detention of goods and are therefore "swe[pt]" within the exception. *See DaVinci*, 926 F.3d at 1126.

The plaintiffs' allegations about Hodges' misconduct are not about the actual detention of goods but about his alleged misrepresentations and cover-up for the reasons the packages were detained two weeks prior. The USPIS officials' conduct falls within the category of conduct that the Ninth Circuit has described as "independent and subsequent to the detention" of the parcels, making the "detention of goods" exception inapplicable. *See Cervantes v. United States*, 330 F.3d 1186, 1189 (9th Cir. 2003). Given the timing, the conduct was "subsequent to" the detention; the packages were already back in the mail stream (and presumably delivered) by the time that Hodges ordered Doo to write the investigative memorandum. Whether the conduct was "independent" of the detention is a closer question, but one that resolves in the plaintiffs' favor, at least at this stage of the case.

In *Cervantes*, the court held that the plaintiff's negligence claim (which alleged that the United States Marshals Service negligently failed to inspect a vehicle that contained 119 pounds of marijuana hidden in its bumpers before selling it to the plaintiff) was not barred by the detention of goods exception because while the government had detained the car before selling it to the plaintiff, Cervantes's claim did not "aris[e] in respect of . . . the detention" of the vehicle because the alleged negligence had "nothing at all to do with the car's detention, but only its subsequent sale." *Cervantes*, 330 F.3d at 1189. The Ninth Circuit observed that the government "may have obtained the car from the detention," but that "miss[ed] the point." *Id.* The court explained that the "negligent act was the government's decision to sell the car without first inspecting it, an independent and intervening event from the detention itself." *Id.*

In contrast, in *DaVinci*, DaVinci Aircraft, Inc. ("DaVinci"), challenged the government's conduct as it related to the seizure of ten military Global Positioning System ("GPS") antennas from DaVinci. The Ninth Circuit held, in relevant part, that some of DaVinci's claims,

(specifically its abuse of process claim, which alleged that the government had an ulterior motive for seizing the antennas, and its claim for conversion), were barred by the detention of goods exception. *See DaVinci*, 926 F.3d at 1124-25. There, DaVinci's claims were completely intertwined with the United States' seizure of its equipment, unlike the claim here.

At oral argument, plaintiffs' counsel argued that Claim 3 arises from the USPIS officers' forward-looking misconduct intended to interfere with their prospective economic relations, making it "independent" of the USPIS's detention of the packages. I agree. The USPIS officers' alleged decision to misrepresent why the plaintiffs' packages were detained through the publication of an investigative memorandum was an "independent and intervening event from the detention itself." *See Cervantes*, at 1189.

This conclusion is not inconsistent with the Ninth Circuit's concerns about improperly narrowing the detention of goods exception. The USPIS officers' alleged conduct was not undertaken as part of their responsibility and authority to detain goods, which the Ninth Circuit has observed is an important one, and not one that should be exposed to liability lightly. *See Foster v. United States*, 522 F.3d 1071, 1077 (9th Cir. 2008) (recognizing previous Supreme Court decision in *Kosak v. U.S.*, 465 U.S. 848 (1984), where the Court held that "exposing the Customs Service to claims [related to their detention of goods] could dampen enforcement efforts, because the power to detain goods was one of the most important sanctions available to ensure compliance with enforcement laws"). The government had already detained the goods and released them back into the mail stream. The inspectors had fulfilled their duties with respect to the goods' detention. Then, nearly two weeks later, they issued an investigatory report, which the plaintiffs allege intentionally misrepresented the motivations behind that detention and harmed the plaintiffs' prospective economic relations. The USPIS officers' challenged conduct was independent of, and subsequent to, their detention of the plaintiffs' packages.[7]

This conduct does not fall under the detention of goods exception. The motion to dismiss

---

[7] Defendant also moves to strike the paragraphs of the 4AC that seek declaratory relief. MTD 15-16. Again, plaintiffs do not contest the motion to strike. *See generally* Opposition. Declaratory relief is not available under the FTCA. The motion to strike is GRANTED.

Claim 3 is DENIED.

## CONCLUSION

Defendant's motion to dismiss is GRANTED in part and DENIED in part. With respect to Claim 1, the "squeeze and sniff" theory is dismissed without leave to amend. Plaintiff's motion for summary judgment is DENIED.

**IT IS SO ORDERED.**

Dated: November 8, 2024

William H. Orrick
United States District Judge