1
2
3
4                           UNITED STATES DISTRICT COURT

5                          NORTHERN DISTRICT OF CALIFORNIA

6

7    RENE QUINONEZ, et al.,                    Case No.  22-cv-03195-WHO

8                    Plaintiffs,
                                               **ORDER RE BILL OF COSTS**
9            v.
                                               Re: Dkt. Nos. 175, 176, 177
10   UNITED STATES OF AMERICA, et al.,

11                   Defendants.

12

13          Plaintiffs René Quiñonez and Movement Ink, LLC brought claims against the United

14   States, alleging that the Postal Service unconstitutionally seized their property because it was

15   associated with political speech.  Ultimately, judgment was entered against plaintiffs and in favor

16   of the defendants on April 15, 2025, *see* Dkt. No. 163, and costs were taxed against plaintiffs in

17   the amount of $29,228.63.  *See* Dkt. No. 164.  Plaintiffs now request that I deny the defendants'

18   billing of costs.  *See* Plaintiffs' Renewed Objections and Motion to Deny Billing of Costs ("Mot.")

19   [Dkt. No. 175].  Because the five-factor balancing test in *Escriba v. Foster Poultry Farms, Inc.*,

20   743 F.3d 1236 (9th Cir. 2014), supports plaintiffs' request, I will not tax costs against plaintiffs.

21   For the reasons set forth below, plaintiffs' motion to deny billing of costs is GRANTED.

22                                   **LEGAL STANDARD**

23          Federal Rule of Civil Procedure 54(d)(1) provides that "costs other than attorneys' fees

24   shall be allowed as of course to the prevailing party unless the court otherwise directs."  This rule

25   "creates a presumption in favor of awarding costs to prevailing parties, and it is incumbent upon

26   the losing party to demonstrate why the costs should not be awarded."  *Stanley v. Univ. of S. Cal.*,

27   178 F.3d 1069, 1079 (9th Cir. 1999).  Should a court choose to deny costs, it must "specify

28

United States District Court
Northern District of California

1    reasons for its refusal to award costs." *Ass'n of Mexican-American Educators v. California*, 231

2    F.3d 572, 591 (9th Cir. 2000).

3        Courts have "discretion to deny costs in certain circumstances." *Godoy v. County of*

4    *Sonoma*, No. 15–cv–00883-WHO, 2016 WL 6663003, at *1 (N.D. Cal. Nov. 10, 2016) (citing

5    *Ass'n of Mexican-American Educators*, 231 F.3d at 593). Appropriate reasons for denying costs

6    include: "(1) the substantial importance of the case, (2) the closeness and difficulty of the issues in

7    the case, (3) the chilling effect on future similar actions, (4) the plaintiff's limited financial

8    resources, and (5) the economic disparity between the parties." *Escriba v. Foster Poultry Farms,*

9    *Inc.*, 743 F.3d 1236, 1247–48 (9th Cir. 2014) (internal citation omitted). A losing party "need not

10   demonstrate that all five factors weigh against imposing costs; rather, this list provides a 'starting

11   point for analysis.'" *Draper v. Rosario*, 836 F.3d 1072, 1087 (9th Cir. 2016) (citing *Escriba*, 743

12   F.3d at 1248). But each of the factors is "an appropriate reason for denying costs." *Id.* at 1089.

**DISCUSSION**

13

14       I understand the government's frustration with plaintiffs' zealous and ultimately misguided

15   advocacy in this case. But analysis of the five-factor test makes plain that it should not recover

16   costs here.

17   **A.        Financial Resources and Economic Disparity**

18       Plaintiffs ask this Court to review and deny the taxing of costs against them due to their

19   limited financial resources and the economic disparity between the parties. Mot. at 5–6. In

20   support of their argument, plaintiffs assert that they "do not have anywhere near the $29,000+ the

21   government is trying to leverage against them," and that "the only way" they could have brought

22   this lawsuit "was with the assistance of pro bono counsel at the Institute for Justice. *Id.* at 2, 6;

23   Declaration of Jaba Tsitsuashvili ("Tsitsuashvili Decl.") [Dkt. No. 175-1] ¶ 7. They also say that

24   Movement Ink is "near-defunct," though their declarations and motion do not describe this in great

25   detail. Mot. at 2. Plaintiffs finally point to the DOJ's "total budgetary resources [of] $67.9

26   billion" for the 2024 fiscal year, indicating a significant "contrast" of financial resources. Mot. at

27   5–6 (citing *Godoy*, 2016 WL 6663003, at *2).

28       Defendants dispute the characterization of plaintiffs' financial situation. They assert that

*United States District Court*
*Northern District of California*

1    "Movement Ink is a for-profit corporation" which "received revenue well into the seven figures

2    from over a thousand invoices from 2014 to 2024." *See* Response to Renewed Objections and

3    Motion to Deny Billing of Costs ("Oppo.") [Dkt. No. 176] at 2; Dkt. No. 144-5.

4         Both parties cite to *Godoy* to support their argument. In *Godoy*, I denied the award of

5    costs against plaintiffs after they "submitted declarations explaining that they do not have

6    significant financial resources and incurring the costs of this lawsuit would place a substantial

7    financial burden on them." 2016 WL 6663003, at *1. Each declaration included information

8    about their income (or lack thereof), living expenses, and other incidental expenses. *Id.* at *2.

9    While defendants disputed the adequacy of these declarations, I concluded that plaintiffs

10   "established that they ha[d] virtually no financial resources," and that the costs would "render

11   them indigent to the extent that they are not already indigent." *Id.* This was particularly apparent

12   when considering that defendants, "as public entities and employees, ha[d] significantly more

13   resources" than plaintiffs. *Id.*

14        Another case cited in *Godoy—Hunter v. City and County of San Francisco*—also found in

15   favor of denying the award of costs on the grounds of indigency. No. 11–cv–4911 JSC, 2013 WL

16   6088409 (N.D. Cal. Nov. 19, 2013). There, the plaintiff submitted a declaration that he was

17   indigent, had previously appeared *in forma pauperis*, relied on state welfare for basic needs, and

18   had $11,000 in outstanding debt to the Internal Revenue Service. *Id.* at *2. Defendants contended

19   that because the plaintiff "received a legal settlement in the amount of $35,000," the request for

20   $14,635.81 costs was warranted even after considering the declaration. *Id.* The court declined to

21   award costs, finding that even if the plaintiff received this settlement money, payment of the costs

22   "would render him indigent to the extent that he is not already." *Id.* In so holding, the court

23   clarified that "[i]t is not necessary to find that the plaintiffs in question are currently indigent;

24   rather the proper inquiry is whether an award of costs might make them so." *Id.* (citing *Rivera v.*

25   *NIBCO*, 701 F. Supp. 2d 1135, 1143 (E.D. Cal. 2010)).

26        Plaintiffs have met their burden in demonstrating that "costs should not be awarded" under

27   *Godoy* and *Hunter*. *See Stanley*, 178 F.3d at 1079. In their motion, plaintiffs establish that

28   defendants are a public entity with a budget of $69.7 billion, whereas they "do not have anywhere

3

near the $29,000+ the government is trying to leverage against them." *See* Mot. at 5–6. This disparity certainly suggests that defendants have "significantly more resources" than plaintiffs to litigate this case. *See Godoy*, 2016 WL 6663003, at *2.

Defendants attempt to distinguish *Godoy* by pointing out that Movement Ink was a "for-profit corporation" who "received revenue well into the seven figures from over a thousand invoices from 2014 to 2024." Oppo. at 2; Dkt. No. 144-5. Even if defendants are correct, the inquiry I must ask is whether an award of costs "*might* make" plaintiffs indigent, not whether they are currently indigent. *See Hunter*, 2013 WL 6088409, at *2 (emphasis added). Under this standard, plaintiffs have provided enough information to suggest they may become indigent from the billed costs: they point out that Movement Ink is "near-defunct," that neither of them have "anywhere near the $29,000+ the government is trying to leverage against them," and that they relied on pro bono representation to bring this case. *See* Mot. at 2; Tsitsuashvili Decl. ¶¶ 3, 7.

Given the significant economic disparities between the parties, along with plaintiffs' precarious financial situation, these two factors weigh in favor in granting plaintiffs' motion.[1]

## B. Substantial Importance and Chilling Effects

"[A] case is considered to be of great importance when the claims involved are subject to closer scrutiny or special interest by the court, or the issues raised in the litigation have ramifications beyond the parties and concerns immediately involved in the litigation." *Ayala v. Pac. Mar. Ass'n*, No. C08–0119 TEH, 2011 WL 6217298 (N.D. Cal. Dec. 14, 2011). Plaintiffs filed this lawsuit after their "time-critical packages" containing "police-protest speech" were seized by law enforcement. Mot. at 3. They asserted this put their "customers—civil rights activists fearful of government interference and retaliation—on alert." *Id.* Plaintiff raised claims under *Bivens*, the Westfall Act (28 U.S.C. § 2679(b)(2)(A)), the First and Fourth Amendments of

---

[1] I recognize that as a general principle, "financial disparity almost always exists between individual plaintiffs litigating against . . . large defendants such as corporations or government," and that accordingly, "disparity alone is insufficient to overcome the presumption in favor of awarding costs." *Van Horn v. Dhillon*, No. 08-CV-01622-LJO-DLB, 2011 WL 66244, at *4 (E.D. Cal. Jan. 10, 2011); *Ayala v. Pac. Mar. Ass'n*, No. C08-0119-THE, 2011 WL 6217298, at *2 (N.D. Cal. Dec. 14, 2011). But, as indicated above, plaintiffs provide enough evidence to show that their own precarious economic situation warrants denying the award of costs.

United States District Court
Northern District of California

the United States Constitution, and various California state laws.

Plaintiffs argue that in "both purpose and effect, the costs sought by the federal government here seek to 'chill civil rights litigation.'" Mot. at 6. The DOJ's efforts to chill plaintiffs' case "should be assessed in the broader speech- and litigation-chilling context in which that effort arises: the current administration's weaponization of the DOJ against disfavored cases or clients, including against pro bono representation of such causes or clients." *Id.*

The government responds that its "intent to seek costs has long been known," as "on October 19, 2022, the United States informed Plaintiffs that it would seek costs if it prevailed in this action." *See* Oppo. at 2. This intent was displayed "across both the previous and current administrations," indicating "no change of position" as the plaintiffs suggest. *Id.* Despite being aware of this position, plaintiffs engaged in "years of aggressive litigation," racking up thousands of dollars in costs. *Id.*

The government also disputes that this is a civil rights case. Rather, it points out that I previously "dismissed all claims that could be characterized as civil rights claims at the pleading stage," and that "the only claims at issue in this case were a business tort (interference with prospective economic relations) and a property tort (trespass to chattels)," both of which were dismissed at summary judgment. *Id.* at 1. "All of the costs sought by the United States were incurred in response to the remaining business and property torts," the government concludes. *Id.*

Both parties are correct, to an extent. The government is correct that the DOJ has maintained its same position of seeking costs between administrations, and that there is no evidence suggesting that it was "weaponiz[ing]" costs against "disfavored cases or clients." But it is also true "that a plaintiff [who] is not ultimately successful on the merits of an issue does not mean that the issues the individual sought were insignificant." *Hunter*, 2013 WL 6088409, at *3 (citing *Darensburg v. Metro. Transp. Comm'n*, No. 05-01597, 2009 WL 2392094, at *2 (N.D. Cal. Aug. 4, 2009).

On balance, these factors favor the plaintiffs. The issues raised by plaintiffs are important. And while their claims ultimately failed, "it is possible that others could bring facially similar yet viable claims." *Fox v. Arizona*, No. [], 2024 WL 1344449, at *3 (D. Ariz. Mar. 28, 2024).

5

1    "Awarding costs in an unsuccessful but non-frivolous claim could cause these individuals to

2    hesitate to bring their own meritorious claims." *Id.* While the costs the government seek are not

3    high, "even modest costs can discourage potential plaintiffs who . . . earn low wages." *Escriba*,

4    743 F.3d at 1249; *cf. Ass'n of Mexican-Am. Educators*, 231 F.3d 572, at 591, 593 (concluding that

5    $216,443.67 in costs was "extraordinarily high").

6    **C. Closeness and Difficulty of the Issues**

7        Plaintiffs argue that this was a "close case" that "survived multiple efforts at dismissal."

8    Mot. at 2. They claim that they "narrowly los[t] on summary judgment based on the Court's

9    assessment of the evidence, even in the face of all the remedial gaps in federal accountability"

10   plaintiffs allegedly identified. *Id.* at 5. Conversely, the government contends that this case was

11   *not* close, as plaintiffs "failed to present any evidence that could overcome the United States'

12   summary judgment motion, and Plaintiffs' opposition consisted mostly of—as the Court itself

13   observed—a 'self-serving affidavit (much of which appears to violate the rules of evidence).'"

14   Oppo. at 1.

15       This factor slightly favors the government. Most of plaintiffs' claims were dismissed for

16   lack of factual support in their pleadings. Plaintiffs' remaining claims were dismissed on similar

17   grounds at summary judgment. At the same time, there was enough ambiguity in some of the

18   defendants' characterization of the facts that plaintiffs had reason to continue the litigation. After

19   discovery, however, it became clear that plaintiffs' assumptions about what had happened were

20   inaccurate.

21                               **CONCLUSION**

22       Upon balancing all the factors, I GRANT plaintiffs' motion to deny the government's bill

23   of costs. The Clerk shall close this case.

24       **IT IS SO ORDERED.**

25   Dated: December 11, 2025

26

27   

28                                               William H. Orrick
                                                 United States District Judge

*United States District Court*
*Northern District of California*

6